**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVANTIKA AGARWAL,<br><br>Plaintiff,<br><br>vs.<br><br>SPLUNK INC., GRAHAM V. SMITH, MARK CARGES, KENNETH HAO, PATRICIA B. MORRISON, YAMINI RANGAN, ELISA STEELE, GARY STEELE, DAVID TUNNELL, DENNIS L. VIA, LUIS VISOSO, and RICHARD WALLACE,<br><br>Defendants. | Case No.: 3:23-cv-05680<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Avantika Agarwal ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Splunk, Inc. ("Splunk" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Cisco Systems, Inc. ("Parent") through merger vehicle Spirit Merger Sub

Corp., a wholly owned subsidiary of Parent ("Merger Sub," and collectively with Parent, "Cisco"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-cash merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a September 20, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Splunk's common stock will be converted into the right to receive $157.00 in cash.

3. Thereafter, on October 18, 2023, Splunk filed a Proxy Statement on Form PREM14A attaching the proxy statement (the "Proxy Statement") with the SEC in support of the Proposed Transaction, followed by the filing of the Definitive Proxy Statement on From DEFM14A on October 30, 2023 (the "Definitive Proxy Statement, and together with the Proxy Statement, the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales

process and in particular certain conflicts of interest for management; (b) the financial projections for Splunk, provided by Splunk management to the Board and the Board's financial advisors Qatalyst Partners LP ("Qatalyst") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion(s) created by Qatalyst and Morgan Stanley, if any, provided to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Splunk stockholder.

8. Defendant Splunk develops and markets cloud services and licensed software solutions in the United States and internationally. The Company offers unified security and observability platform, including Splunk Security that helps security leaders fortify their organization's digital resilience by mitigating cyber risk and meeting compliance requirements; and Splunk Observability, which provides visibility across the full stack of infrastructure, applications, and the digital customer experience. Splunk is incorporated in Delaware and has its principal place of business at 270 Brannan Street, San Francisco, CA 94107. Shares of Splunk common stock are traded on the NASDAQ Exchange under the symbol "SPLK."

9. Defendant Graham V. Smith is Chair of the Board and has been a Director of the Company at all relevant times.

10. Defendant Mark Carges has been a director of the Company at all relevant times.

11. Defendant Kenneth Hao has been a director of the Company at all relevant times.

12. Defendant Patricia B. Morrison has been a director of the Company at all relevant times.

1   13.   Defendant Yamini Rangan has been a director of the Company at all relevant times.

2   14.   Defendant Elisa Steele has been a director of the Company at all relevant times.

3   15.   Defendant Gary Steele is Chief Executive Officer of Splunk and has been a director of the Company at all relevant times.

5   16.   Defendant David Tunnell has been a director of the Company at all relevant times.

6   17.   Defendant Dennis L. Via has been a director of the Company at all relevant times.

7   18.   Defendant Luis Visoso has been a director of the Company at all relevant times.

8   19.   Defendant Richard Wallace has been a director of the Company at all relevant times

9   20.   Defendants identified in ¶¶ 9-19 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

21.   This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.   Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.   Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Splunk maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24. Splunk develops and markets cloud services and licensed software solutions in the United States and internationally. The Company offers unified security and observability platform, including Splunk Security that helps security leaders fortify their organization's digital resilience by mitigating cyber risk and meeting compliance requirements; and Splunk Observability, which provides visibility across the full stack of infrastructure, applications, and the digital customer experience. It also provides application programming interfaces, software development kits, and other interfaces that enables its network of third-party developers, partners, and customers to build content, including pre-built data inputs, workflows, searches, reports, alerts, custom dashboards, flexible user interface components, custom data visualizations, and integration actions and methods that configures and extends its solutions to accommodate specific use cases. In addition, the Company offers adoption and implementation, education, and customer support services. It sells its offerings directly through field and inside sales, and indirectly through various routes to market with various partners.

***The Proposed Transaction***

25. On September 21, 2023, Splunk and Cisco issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> San Jose and San Francisco, Calif., September 21, 2023 — Cisco (NASDAQ: CSCO) and Splunk (NASDAQ: SPLK), the cybersecurity and observability leader, today announced a definitive agreement under which Cisco intends to acquire Splunk for $157 per share in cash, representing approximately $28 billion in equity value. Upon close of the acquisition, Splunk President and CEO Gary Steele will join Cisco's Executive Leadership Team reporting to Chair and CEO Chuck Robbins.
>
> The acquisition builds on Splunk's heritage of helping organizations enhance their digital resilience and will accelerate Cisco's strategy to securely connect everything to make anything possible. The combination of these two established leaders in AI, security and observability will help make organizations more secure and resilient.
>
> "We're excited to bring Cisco and Splunk together. Our combined capabilities will drive the next generation of AI-enabled security and observability," said Chuck Robbins, chair and CEO of Cisco. "From threat detection and response to threat prediction and prevention, we will help make organizations of all sizes more secure and resilient."

"Uniting with Cisco represents the next phase of Splunk's growth journey, accelerating our mission to help organizations worldwide become more resilient, while delivering immediate and compelling value to our shareholders," said Gary Steele, president and CEO of Splunk.

"Together, we will form a global security and observability leader that harnesses the power of data and AI to deliver excellent customer outcomes and transform the industry. We're thrilled to join forces with a long-time and trusted partner that shares our passion for innovation and world-class customer experience, and we expect our community of Splunk employees will benefit from even greater opportunities as we bring together two respected and purpose-driven organizations," Steele added.

In today's hyperconnected world, data is everywhere, with every organization relying on it to run their business and make mission-critical decisions every day. Factoring in the acceleration and adoption of generative AI, expanding threat surfaces, and multiple cloud environments, it creates a level of complexity that is unlike anything organizations have faced. Organizations need a better way to manage, protect, and unlock data's true value and stay digitally resilient.

Together, Cisco and Splunk will address these challenges head on.

The combination of these two established leaders with complementary capabilities in AI, security and observability will unlock the true value of data and will help make organizations of all sizes more secure and digitally resilient.

Specifically, Splunk's security capabilities complement Cisco's existing portfolio, and together, will provide leading security analytics and coverage from devices to applications to clouds.

Cisco and Splunk's complementary capabilities will provide observability across hybrid and multi-cloud environments enabling the company's customers to deliver smooth application experiences that power their digital businesses. Cisco and Splunk are well positioned to help customers responsibly harness the power of AI given their substantial scale, visibility into data, and foundation of trust.

The union of these two organizations will allow for greater investments in new solutions, accelerated innovation, and increased global scale to support the needs of customers of all sizes.

Cisco's acquisition of Splunk will also build upon both companies' reputations for being purpose-driven with similar values, strong cultures, and incredibly talented teams. The acquisition will unite two "Great Places to Work" with a shared passion for innovation and inclusion and will remain a great place to work and the premier place for software talent.

Transaction Details

Under the terms of the agreement, Cisco intends to acquire Splunk for $157 per share in cash, representing approximately $28 billion in equity value. The transaction is expected to be cash flow positive and gross margin accretive in the first fiscal year post close, and non-GAAP EPS accretive in year two. Additionally, it will accelerate Cisco's revenue growth and gross margin expansion.

The transaction will not impact Cisco's previously announced share buyback program or dividend program.

The acquisition has been unanimously approved by the boards of directors of both Cisco and Splunk. It is expected to close by the end of the third quarter of calendar year 2024, subject to regulatory approval and other customary closing conditions including approval by Splunk shareholders.

*Potential Conflicts of Interest*

26.     The breakdown of the benefits of the deal indicate that Splunk insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Splunk.

27.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Number of Shares Beneficially Owned | Percent Owned |
| --- | --- | --- |
| **5% Stockholders** | | |
| The Vanguard Group, Inc.[(1)] | 16,014,851 | 9.5% |
| Hellman & Friedman LLC[(2)] | 12,799,822 | 7.6% |
| BlackRock, Inc.[(3)] | 11,085,883 | 6.6% |
| PRIMECAP Management Company[(4)] | 10,945,923 | 6.5% |

| Directors and Named Executive Officers | | |
|---|---|---|
| Gary Steele[5] | 31,826 | * |
| Tom Casey[6] | 34,964 | * |
| Graham Smith[7] | 34,518 | * |
| Shawn Bice | — | * |
| Teresa Carlson | — | * |
| Jason Child | 39,288 | * |
| Scott Morgan[8] | 76,242 | * |
| Brian Roberts | — | * |
| Christian Smith[9] | 60,194 | * |
| Mark Carges[10] | 22,681 | * |
| Kenneth Hao[11] | 7,503 | * |
| Patricia Morrison[12] | 35,872 | * |
| Yamini Rangan[13] | 1,870 | * |
| Elisa Steele[14] | 9,719 | * |
| David Tunnell[15] | 5,431 | * |
| General Dennis Via (ret)[16] | 8,297 | * |
| Luis Visoso[17] | 4,990 | * |
| Richard Wallace[18] | 5,431 | * |
| All executive officers and directors as a group (15 persons)[19] | 339,538 | * |

28.     In addition, certain employment agreements with certain Splunk executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Potential Payments to Named Executive Officers**

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Gary Steele | $9,842,123 | $90,343,609 | $30,802 | $100,216,534 |
| Graham Smith | — | $327,031 | — | $327,031 |
| Brian Roberts | $5,150,000 | $50,700,324 | $32,624 | $55,882,948 |
| Scott Morgan | $945,000 | $22,965,865 | $33,386 | $23,944,251 |

29. The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

30. Thus, while the Proposed Transaction is not in the best interests of Splunk, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

31. On October 30, 2023, the Splunk Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

32. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

    a. Whether the confidentiality agreements entered into by the Company with Cisco differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    b. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

   potentially interested third parties throughout the sales process, including Cisco, would fall away; and

 c. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Splunk's Financial Projections*

33. The Proxy Statement fails to provide material information concerning financial projections for Splunk provided by Splunk management to the Board, Morgan Stanley and Qatalyst, and relied upon by Morgan Stanley and Qatalyst in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

34. Notably the Proxy Statement reveals that as part of its analyses, Qatalyst and Morgan Stanley reviewed the sets of projections prepared by the management of the Company.

35. Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Splunk management provided to the Board, Qatalyst and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

36. With regard to the *Baseline Management Projections* and both the *Sensitivity I Projections* and the *Sensitivity II Projections,* prepared by Splunk, the Proxy Statement fails to disclose material line items for the following important metrics:

 a. Non-GAAP Operating Income; and

 b. Unlevered Free Cash Flow; and

37. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

38. This information is necessary to provide Plaintiff, in their capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

39. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Qatalyst's and Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

40. In the Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

41. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following:

    a. The inputs, metrics, and assumptions used to determine range of discount rates from 12.0% to 14.0%;

    b. The inputs, metrics, and assumptions used to determine perpetuity growth rate range of 3.0% - 5.0%;

    c. The implied net present value of a corresponding terminal value of the Company utilized;

    d. The net debt of the Company utilized; and

  e. The Company's fully diluted shares utilized as of September 18, 2023;

42. With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose the following:

  a. The specific inputs and assumptions used to determine the utilized CY2024E Revenue Multiple reference range;

  b. The specific inputs and assumptions used to determine the utilized consensus levered free cash flow estimates for calendar year 2024; and

  c. The number of fully diluted shares of Company common stock outstanding as of September 18, 2023.

43. With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose the following:

  a. The specific date on which each transaction closed;

  b. The value of each transaction compared;

  c. The specific inputs and assumptions used to determine the utilized NTM Revenue Multiple, NTM EBITDA Multiple and NTM LCF Multiple reference ranges; and

  d. The number of fully diluted shares of Company common stock outstanding as of September 18, 2023.

<u>*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*</u>

44. With respect to the *Public Trading Comparables Analysis*:

  i. The specific inputs, metrics, and assumptions used to determine the utilized P/CY2024E LFCF Multiple Range and V/CY2024E Revenue Multiple Range; and

  ii. The fully diluted shares of the Company as of September 18, 2023

  b. With respect to the *Discounted Equity Value Analysis*:

   i. The specific range of implied equity values per share of Company Common stock calculated;

      ii. The specific inputs, metrics, and assumptions used to determine the utilized levered free cash flow multiple range of 15.0x to 25.0x and an aggregate value to estimated revenue multiple range of 4.0x to 6.0x;

      iii. The specific inputs, metrics, and assumptions used to determine the utilized Selected P/CY2026E LFCF Multiple Ranges and Selected AV/CY2026E Revenue Multiple Ranges; and

      iv. The specific inputs, metrics, and assumptions used to determine the utilized discount rate of 12.9%;

c. With respect to the *Discounted Cash Flow Analysis*:

      i. The terminal value for the Company, calculated;

      ii. The inputs, metrics, and assumptions used to determine the utilized range of terminal free cash flow multiples of 15.0x to 25.0x;

      iii. The inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.6% to 13.5%;

      iv. The inputs, metrics, and assumptions used to determine the utilized; perpetual growth rates of 3.0 percent to 5.0 percent; and

      v. The number of fully diluted shares of Company Common Stock on a fully diluted basis as of September 18, 2023.

d. With respect to the *Precedent Transactions Multiples Analysis*:

      i. The specific dates on which each selected precedent transaction closed;

      ii. The value of each selected precedent transaction; and

      iii. The specific inputs, metrics, and assumptions used to determine the utilized P/LFCF Revenue Multiple Range and AV/NTM Revenue Multiple Range.

e. With respect to the *Illustrative Precedent Transaction Premiums*:

      i. The specific premia analyzed, and the specific transactions from which they arose; and

      ii. The inputs, metrics, and assumptions used to determine the utilized Premia to Unaffected Spot range of 20% to 40% utilized in this analysis; and

      iii. The inputs, metrics, and assumptions used to determine the utilized Premia to Unaffected 30-Trading Day Average range of 20% to 40% utilized in this analysis.

   f. With respect to the *Equity Research Analysts' Future Price Targets*:

      i. The specific price targets utilized, as well as the Wall Street firms/analysts that created them; and

      ii. The inputs, metrics, and assumptions used to determine the utilized. estimated cost of equity of 14.3% for Splunk.

45. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

46. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Splunk stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

47. Plaintiff repeats all previous allegations as if set forth in full herein.

48. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

49. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

   It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

50. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

51. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

52. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

53. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

54. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

55. Plaintiff repeats all previous allegations as if set forth in full herein.

56. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

57. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

58. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Splunk' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being

concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

59. The Individual Defendants acted as controlling persons of Splunk within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Splunk to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Splunk and all of its employees. As alleged above, Splunk is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 3, 2023          **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*